UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RENEE M. FINCH,

    Plaintiff,

*v*.                                 CASE NO. 07-CV-13796

COMMISSIONER OF            DISTRICT JUDGE GERALD E. ROSEN
SOCIAL SECURITY,             MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

### I.    **RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits ("DIB"). This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 10, 15.)

Plaintiff was 42 years of age at the time of the most recent administrative hearing. (Transcript, Dkt. 8 at 13, 408.) Plaintiff's relevant employment history consisted solely of work as a nail technician from August 30, 1990, to August 30, 2000. (Tr. at 94.)

Plaintiff filed the instant claim on September 13, 2003, alleging that she became unable to work on September 1, 2000. (Tr. at 13, 52.) The claim was denied initially and upon reconsideration. (Tr. at 22.) In denying Plaintiff's claim, the Defendant Commissioner considered fibromyalgia and disorders of the back (discogenic and degenerative) as possible bases of disability. (*Id.*)

On December 20, 2005, Plaintiff appeared, via interactive video conference, with counsel before Administrative Law Judge ("ALJ") Mary L. Everstine who considered the case *de novo*.[2] In a decision dated January 19, 2006, the ALJ found that Plaintiff was not disabled. (Tr. at 13-21.) Plaintiff requested a review of this decision on March 6, 2006. (Tr. at 9-10.)

---

[2]The video hearing was originally scheduled for September 5, 2005, but was adjourned because medical records had been delayed in reaching the ALJ. (Dkt. 10 at 8.)

The ALJ's decision became the final decision of the Commissioner when, on July 20, 2007, after the review of an additional exhibit and a brief letter from Plaintiff's counsel[3] (AC-1, Tr. at 389-96), the Appeals Council denied Plaintiff's request for review. (Tr. at 5-7.) On October 10, 2007, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

**B.      Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner

---

[3]In this Circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

3

has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record

4

only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241; *see also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"). *Accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*)

5

and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.) Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" is defined as follows:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v) and 416.920(g)).

### D. Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff sought treatment with Raymond Cole, D.O., from 1998-2002. (Tr. at 112-74.) During that time, Plaintiff underwent a number of diagnostic tests. A bone density examination was normal. (Tr. at 119.) One set of x-rays of the spine were normal. (Tr. at 151.) A later set of x-rays revealed degenerative disc disease at the L5-S1 level with no evidence of fracture or subluxation. (Tr. at 123.) An abdominal biopsy showed a "fibrous skin tag covered with squamous epithelium," but "no evidence of malignancy." (Tr. at 133.) Screening for Lyme's Disease was negative. (Tr. at 135-37.) Chest x-rays (Tr. at 138, 161), an ultrasound of the pelvis (Tr. at 149), mammography tests (Tr. at 150, 194), and a PAP smear (Tr. at 152) were all normal.

An MRI of the cervical spine was "essentially negative," but revealed some "very mild degenerative changes." (Tr. at 166.) An ultrasound of the gallbladder (Tr. at 359) and an echocardiogram (Tr. at 363) were both normal. Plaintiff also underwent a period of physical therapy. (Tr. 176-93.)

Plaintiff was also seen in 2001 by Madhu Arora, M.D., who assessed Plaintiff's symptoms as "consistent with fibromyalgia, and given the ongoing nature of her complaints," he prescribed Celebrex and Norflex and "advised [her] to exercise on a more regular basis." (Tr. at 197.) Three years earlier, Dr. Arora had stated that although Plaintiff had a "history classic for fibromyalgia," at that time "there [were] no significant findings on the examination." (Tr. at 272.)

Plaintiff was also seen by Robert Silbergleit, M.D., in February of 2000, who concluded that "[t]he exact cause of the patient's pain was unclear, but may be related to persistent adenitis." (Tr. at 199.)

Plaintiff also received treatment at the Foote Hospital Center for Pain Management in 2004. Dr. Veronica Garcia and Dr. Michael Sheth's impressions were that Plaintiff had fibromyalgia with "psychosocial factors affecting [her] physical condition" and low back pain. (Tr. at 213, 350-55.)

Plaintiff underwent a consultative examination at the request of the Disability Determination Service ("DDS") in January 2004. The doctor examined Plaintiff for "fibromyalgia, irritable bowel syndrome, chronic fatigue, and back pain." (Tr. at 201.) The doctor reported that Plaintiff could bend forward 70 of the normal 90 degrees and had an approximate 20% limitation in other movements of the spine. (Tr. at 202.) His "conclusions" were as follows:

> The patient has multiple complaints, including fibromyalgia, irritable bowel, chronic fatigue, and back pain. She's on multiple pain medications. She's been seeing a rheumatologist and seems to be in moderate control. She failed anti-depressant treatment. She's trying to quit smoking and has since been gaining weight. She's at her maximum weight today. She is slightly hypertensive today, however, she denies hypertension. She was a nail technician and was stooped over much of the

8

day and was attributing much of her back pain to her work. She hasn't worked in
some time and is currently not receiving any Social Security benefits.

(Tr. at 203.)

A residual function capacity ("RFC") assessment performed by a DDS physician in February of 2004 indicated that Plaintiff could occasionally lift up to 20 pounds, frequently lift up to 10 pounds, stand or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and that Plaintiff's ability to push or pull was unlimited. (Tr. at 206.) In addition, the agency physician determined that Plaintiff's ability to climb, balance, kneel, and crawl were frequently limited and that her ability to stoop and crouch were occasionally limited. (Tr. at 207.) No manipulative, visual, communicative, or environmental limitations were noted. (Tr. at 208-09.) Although the agency physician found Plaintiff's symptoms attributable to a medically-determinable impairment, he also found that the severity or duration of the symptoms were "disproportionate" to the expected severity or duration of the impairment. (Tr. at 210.) He also noted that he found Plaintiff's statements to be only "partially credible" regarding the severity or duration of her pain. (*Id.*) The agency physician observed that there was no treating or examining source statement regarding Plaintiff's physical capacities to compare with his own findings. (Tr. at 211.)

Dr. Cole partially completed a "medical source statement concerning claimant's ability to engage in work-related activities," but deferred to the evaluation to be completed by Dr. Arora. (Tr. at 215.) Dr. Arora's assessment in February 2005 concluded that Plaintiff could stand and walk without an assistive device, that she would need to take unscheduled breaks during an 8-hour workday, and that she would experience good days and bad days, but left many other criteria "not assessed." (Tr. at 228-29.) In November 2005, two physical therapists completed a "functional recovery screen" at the request of Dr. Arora. They found that Plaintiff exhibited normal hand and

9

leg strength. (Tr. at 385, 386.) Plaintiff exhibited deviations in her gait, two deviations in posture, and an inability to perform awkward postures. (Tr. at 386.) The examining therapists determined that Plaintiff had the ability to walk for twenty minutes, the ability to lift 8 pounds occasionally from waist to shoulder, the ability to occasionally lift 5 pounds from shoulder to overhead, to carry 8 pounds for a distance of 100 feet, and to push and pull 8 pounds for 20 feet on a smooth surface. (Tr. at 386.) They also found that Plaintiff could tolerate sitting for 30 minutes and standing for 30 minutes but that she exhibited signs of pain such as grimacing. (Tr. at 387.) They concluded that Plaintiff could stand or walk for up to 2 hours in a 2-4 hour workday, and could sit for up to 2 hours in a 2-4 hour workday, that she could occasionally shoulder-lift 8 pounds, overhead-lift 5 pounds, carry, push, or pull 8 pounds, could do simple grasping but not fine manipulation, could not balance, bend, squat, crawl, kneel or climb, but could reach occasionally. (Tr. at 388.)[4]

### E. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since September 1, 2003, and that Plaintiff meets the insured status requirements through the date of the decision. (Tr. at 20.) At step two, the ALJ found that Plaintiff's "fibromyalgia and mild degenerative disc disease L5-S1 without spondylolysis or spondylolisthesis" were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step

---

[4] I note that since these assessments were made by physical therapists rather than a physician and were made after the agency physician completed his RFC assessment, the agency physician was correct in stating that at the time he assessed Plaintiff there was no treating or examining source statement regarding Plaintiff's actual physical capabilities to compare or contrast with his own findings.

10

four, the ALJ found that Plaintiff could not perform any of her previous work as a nail technician. (*Id.*) At step five, the ALJ found that Plaintiff was a "younger individual between the ages of 18 and 44" throughout all the relevant periods, and the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs, such as cashier, assembler and packager, available in the regional economy, i.e., in Michigan. (Tr. at 20-21.) The ALJ also found the VE's testimony consistent with information contained in the Dictionary of Occupational Titles. (Tr. at 18.)

Using the Commissioner's grid rules as a guide, the ALJ found that Plaintiff has the residual functional capacity to perform a significant range of light work (Tr. at 21), and she thus concluded that Plaintiff would remain able to perform a significant number of jobs existing in the national and regional economy. (*Id.*)

### F. Analysis and Conclusions

### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a significant range of light work. (Tr. at 21.) Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in her application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

2.      **Substantial Evidence**

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff argues that the ALJ failed to properly consider Plaintiff's obesity as an impairment or to consider its effect in combination with her other impairments. (Dkt. 10 at 19-22.) Defendant responds that Plaintiff has not presented any evidence that her obesity caused any physical limitations. (Dkt. 15 at 15.) The ALJ noted that at the time of examination in April 2003, Plaintiff was five feet, five and one-half inches tall and weighed 219 pounds, reflecting a gain of more than 30 pounds since April 2000. (Tr. at 15.) Plaintiff adds that she has a body mass index ("BMI") of 36.6 or Level II obesity as determined by the National Institute of Health. (Dkt. 10 at 9.)

In 1999, the Social Security Administration deleted Listing 9.09, "Obesity," from the Listing of Impairments at 20 C.F.R. Subpart P, Pt. 404, App. 1. Now that "there is no listing for obesity, we will find that an individual with obesity 'meets' the requirements of a listing if he or she has another impairment that, by itself, meets the requirement of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements

12

of a listing." SSR 02-1p, 67 Fed. Reg. 177, 57859-57864 (Sept. 12, 2002).[5] The agency has indicated that it "will not make assumptions about the severity or functional effects of obesity combined with other impairments . . . [because obesity] may or may not increase the severity or functional limitations of the other impairment." *Id.*

The Sixth Circuit has admonished that "[i]t is a mischaracterization to suggest that [the ruling] offers any particular mode of analysis for obese disability claimants." *Blesdoe v. Barnhart*, 165 Fed. App'x 408, 411-12 (6th Cir. Jan. 31, 2006) (ALJ did not err in considering obesity as a factor in whether claimant had a listed impairment). The mere fact that a plaintiff is obese does not substitute for medical evidence showing that obesity increased the severity or functional limitations of other impairments. *Cranfield v. Comm'r of Social Security*, 79 Fed. App'x 852, 857 (6th Cir. 2003) ("The ALJ did nothing more than mention [plaintiff's] obesity because neither [plaintiff] nor her doctors offered any evidence to suggest that obesity was a significant impairment, [thus,] the ALJ was not required to give the issue any more attention than he did"). *See also Sattler v. Comm'r of Social Security*, No. 07-13952, 2008 WL 2115256, at *4 (E.D. Mich. May 19, 2008) (where only evidence was that doctors "commented" on obesity, [t]his minuscule amount of evidence does not prove Plaintiff's alleged obesity causes functional limitations").

Thus, an ALJ's failure to consider the effects of alleged obesity is not error where the record supports the ALJ's decision or where the medical evidence does not reveal that obesity caused or exacerbated any functional limitations. *See Johnson v. Astrue*, No. 3:07-CV-96, 2008 WL 746686, at *2-3 (E.D. Tenn. Mar. 18, 2008) ("ALJ was not required to consider whether plaintiff's obesity was a severe impairment because he determined that one of plaintiff's other impairments was severe . . . . Accordingly, determination of whether any of plaintiff's other

---

[5]This Social Security Ruling is available at http://www.ssa.gov/OP_Home/rulings/di/01/SSR2002-01-di-01.html.

impairments, including obesity, are severe was not necessary"); *Webster v. Comm'r of Social Security*, No. 5:06-CV-162, 2008 WL 207578 (W.D. Mich. Jan. 24, 2008) (substantial evidence supported ALJ's decision even though ALJ's opinion did not address obesity as a severe impairment or as increasing the severity of her other limitations where there was no medical evidence showing that her obesity was medically equivalent to Listing 1.02A, inability to ambulate effectively, where claimant was able to walk without assistance) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (lack of medical evidence demonstrating inability to ambulate effectively is fatal to claim that obesity is medically equivalent to Listing 1.02A)).

Here, although Plaintiff argues that the ALJ wrongfully failed to consider obesity to determine its effect on Plaintiff's ability to perform work, Plaintiff does not point to any medical evidence suggesting that obesity caused functional limitations. (Dkt. 10 at 18-22.) Under these circumstances, I suggest that the ALJ was not required to address obesity distinctly from the other evidence on the record.

Plaintiff also contends that the ALJ did not accord adequate weight to the opinion of Plaintiff's treating physician, Dr. Arora. (Dkt. 10 at 22-27.) Defendant responds that Dr. Arora's findings were simply too vague and lacking in detail to provide useful information in determining Plaintiff's abilities to perform work-related activities despite her impairments. (Dkt. 15 at 17-18.)

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating

physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007) (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, *5 (1996); *Rogers*, 486 F.3d at 242. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "The opinion of a non-examining physician, on the other hand, 'is entitled

15

to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir.1987)).

The ALJ found that Plaintiff could lift up to 20 pounds occasionally, 10 pounds frequently, and stand, walk or sit up to 6 hours in an 8-hour workday with sit-stand options and the ability to change positions. (Tr. at 20 (ALJ), 206 (DDS physician).) The therapists engaged by Dr. Arora to perform the "functional recovery screen" found that Plaintiff could lift 8 pounds occasionally from waist to shoulder, could occasionally lift 5 pounds from shoulder to overhead, could carry 8 pounds for a distance of 100 feet, and could push and pull 8 pounds for 20 feet on a smooth surface. (Tr. at 386.) Although they found that Plaintiff had deviations in her gait, they also found she had the ability to walk without any assistive device, and that Plaintiff could walk continuously for twenty minutes. (Tr. at 228, 385-86.) I therefore suggest that the DDS physician's conclusions are not contrary to the findings made by the therapists engaged by Dr. Arora and, therefore, were properly accorded some weight by the ALJ.

I further suggest that the ALJ's findings follow the opinions of the vocational expert which came in response to proper hypothetical questions that accurately portrayed Plaintiff's individual physical and mental impairments in harmony with the objective record medical evidence as presented by all the treating and examining physicians, as well as the daily activities described by Plaintiff herself, i.e., that she drives, does laundry, walks her dogs, dusts and does light housework, makes light meals, shops for groceries for one hour once a week and for clothes or personal items for up to two to three hours, watches television, goes out to lunch once a week or every other week, reads, and talks on the telephone with friends. (Tr. at 74-75, 408, 414, 417-19.)

"The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp. 2d 489, 497 (E.D. Mich. 2005). The ALJ is only required to incorporate the limitations that he finds credible. *Casey v. Sec'y of HHS,* 987 F. 2d 1230, 1235 (6th Cir. 1993). This obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476. On this record, I suggest that the ALJ properly included all the limitations supported by medical evidence and properly chose not to include Plaintiff's own subjective conclusions as to the degree of pain she endures or the subjective conclusion that she is unable to do any work at all.

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections

a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                    s/ *Charles E Binder*
                                    CHARLES E. BINDER
Dated: June 24, 2008                    United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James Brunson, Charles Robison, and the Commissioner of Social Security, and served on U.S. District Judge Rosen in the traditional manner.

Date: June 24, 2008          By    s/Patricia T. Morris
                                            Law Clerk to Magistrate Judge Binder